————o————

JACOB CANTLING, Respondent, vs. HAN. & ST. JOE. RAILROAD COMPANY, Appellant.

1. *Railroad Companies—Responsibility of, for dog left with baggage master.*— The owner having a dog on a railroad train, being informed by a brakesman and the baggage master that the animal was not allowed in the passenger car placed him in charge of the baggage master, and paid the latter for his transportation. By the regulations which were posted and printed at the various stations "live animals" were "allowed as baggagemen's perquisites. "No special notice of this rule was brought home to the owner. Company held liable for loss of the dog by the baggageman.

2. *Evidence—Experts, opinions of, as to market value of dogs.*—Experts may be allowed to give their opinions as to the marketable value of dogs, the opinions being based either on actual sales or their general observation and experience.

*Appeal from Macon Circuit Court.*

*James Carr*, for Appellant.

I. A dog is not baggage. Respondent had no legal right to have the dog in controversy carried; and if the appellant had refused to carry the dog it would not have been guilty of a breach of duty. (Bell vs. Drew, 4 E. D. Smith, 59 ; Hawkins vs. Hoffman, 6 Hill, 585 ; Cin. & Ch. R. R. Co., vs. Marcus, 38 Ill., 219 ; Pardee vs. Drew, 25 Wend., 459 ; Collins vs. Boston & M. R. R. Co., 10 Cush., 506 ; Orange Co. Bank vs. Brown, 9 Wend., 86 ; Harris vs. Han. & St. J. R. R. Co., 37 Mo., 307.)

II. Carrying a dog may be regarded more in the light of carrying live animals than baggage. The appellant is not liable for the loss of live stock unless guilty of negligence. (Carr vs. Lancashire & York R'way, 7 Exch., 712 ; McManus vs. Lancashire R'way Co., 2 Hurl. & N., 693 ; Palmer vs. Grand Junction R'way Co., 4 Mees. & W., 758 ; Clark vs.

Rochester & S. R'way Co., 14 N. Y., 573; Mich. South. & N. Ind. R'way Co., vs. McDonough, 21 Mich., 165; Smith vs. New Haven & Northampton R. R. Co., 12 Allen, 531; North Eastern R'way Co. vs. Richardson & Cisson, 26 L. T., [N. S.] 131; Boyce vs. Anderson, 2 Pet., 150.)

III. The appellant was not acting in its capacity of common carrier in carrying the respondent's dog; the most favorable aspect in which the case can be viewed for the respondent is, that the appellant, was a private carrier for hire; and as such, it is only liable in case of negligence. (Ang. Car., §§ 46, 54; Story Bailm., § 495; Satterlee vs. Groat, 1 Wend., 273; Wells vs. Steam Nav. Co., 2 N. Y., 204; Caton vs. Rumney, 13 Wend., 389; Runyan vs. Caldwell, 7 Humph. 134; Alexander vs. Greene, 3 Hill, 9; Brind vs. Dale, 8 Car. & Payne, 207.)

*Williams & Ederman,* for Respondent, cited in argument, Brill vs. Flagler, 23 Wend., 355; 5 Seld., 188; 28 Mo., 127; 2 Redf. R'way [4 Ed.], 91–9.)

NAPTON, Judge, delivered the opinion of the court.

This action originated before a justice of the peace, to recover the value of a dog, alleged to be worth ninety dollars. It is averred that the dog was delivered to the baggage master of a train on which plaintiff was a passenger; and that the baggage master agreed to transport the dog to New Cambria, for $1.50 which was paid, and to deliver him at New Cambria to said plaintiff. The dog was lost and plaintiff therefore sued the R. R. Co., defendant.

The plaintiff recovered before the justice, had a verdict and judgment for $90, from which defendant appealed to the Circuit Court.

The facts as they appeared on the trial were about these: The plaintiff, on his return from a hunting excursion, took passage on the defendant's road at St. Joseph, and took the dog with him into the coach. About an hour after the train started, he was told by a brakesman that dogs were not allowed to ride in the passenger coaches, and that the dog must be

put in the baggage car, and subsequently the plaintiff received the same information from the baggage master; whereupon the baggage master took the dog in the baggage car, and the plaintiff, after inquiring about the charge, paid the baggage master $1.50 for the transportation of the dog to New Cambria.

The principal witness for plaintiff proposed to state the value of the dog, but this was objected to on the grounds that dogs had no marketable price, and that the dog in question was not shown to possess any peculiar qualities which would make him vendible; but this objection was overruled and the witness said the dog was worth $100, after previously stating that the dog was a well trained setter and particularly valuable as a water dog. The same witness was asked what he gave for the dog, and this question was objected to as immaterial and the objection sustained.

Several witnesses were examined as to the value of hunting dogs and testified about their price varying from 50 to 75 dollars, admitting however that this depended very much on the fancy of the purchaser.

It seems, that certain rules on the subject of baggage had been at the time of this occurrence adopted by defendant, and posted up in printed form at the various R. R. stations. The only important part of these regulations is the following, "Live animals are allowed as baggagemen's perquisites." The general baggage agent of defendant stated in his deposition that "it is the custom of R. R. Co. to allow baggagemen to receive and transport dogs on their own personal account and personal responsibility to their owners. None of the companies receive any part of the compensation or assume any of the responsibility for the care or delivery of such dogs."

There was no evidence that the plaintiff knew of any such regulations, except from their being posted up as above stated.

The dog in question was not injured or lost, in the course of transportation, but the baggage master delivered the dog to some person, not the plaintiff, and at some way station, not New Cambria, and so the plaintiff lost him.

The court declared the law to be, that a dog is not baggage, and that defendant, as a common carrier, was not bound to receive and carry a dog in a passenger coach or in a baggage car attached thereto, although the owner was a passenger and that the measures of damages in the event of a finding for the plaintiff, was the actual market value of the dog in the vicinity of New Cambria and not any fanciful price of the owner.

The court also refused two instructions which are as follows: 1st. The defendant may make a rule permitting its baggage master to take a dog owned by a passenger upon one of its passenger trains into the baggage car of said train, for the accommodation of such passengers, and to receive the perquisites for feeding and watering and taking care of such dog for such passenger, and in the event that such dog should never be delivered to such passenger by said baggage master, the defendant would not be liable to him for failing to deliver such dog. 2nd. If the Court believe from the evidence that the plaintiff without the knowledge or consent of the agents or employees conducting and managing the train on which plaintiff took passage, took the dog sued for into one of defendant's passenger coaches at St. Joseph with the intent to have said dog carried from St. Joseph to New Cambria; that after said train left St. Joseph an hour or more he was informed by employees of defendant on said train, that said dog could not be allowed to be carried on said coach, that he thereupon put said dog into the baggage car attached to said train in charge of the baggage master thereof, and said dog was never delivered to plaintiff by said baggage master, the court will find for defendant, although it may further believe from the evidence that the plaintiff, put said dog in charge of the baggage master of said train at the instance of said baggage master, and paid said baggage master for feeding, watering and taking care of said dog for him.

The case was submitted to the court and the court found for the plaintiff, and assessed his damages at $30.

The main question is whether the plaintiff was entitled to

recover of the R. R. Co., for the value of a dog lost by the baggage master, to whom the dog was entrusted, and who was authorized by the regulations to take the dog in the baggage car as "perquisite," there being no special notice to the owner, except such as may be implied from such regulations being printed and posted in the station offices. It is conceded that the baggage master had a right, under the regulations of the company to receive a dog of a passenger and charge a small sum for his trouble, but it is claimed that by the printed regulations, as well as by the custom of this and other Railroad Companies, no responsibilty is assumed by the Companies; that all losses whether accidental or willful or negligent, must be borne by the traveler, whose only remedy is a suit against the baggage master. In other words the traveler must bear the loss, if any occurs, for it would be folly to talk of a suit against a baggage master.

In the case of Minter vs. Pac. R. R., (41 Mo., 503,) this court held, that an agent of a railroad company, in that case a baggage master, acting within the general scope of his employment, bound the company, notwithstanding in the particular case he disregarded instructions. That was a case where an article of freight was received by the baggage master as baggage, contrary to the rules of the company. In this case the baggage master acted in conformity to his instructions, and received the dog in his baggage room and took his perquisites, as the company allowed him to do. But the company insist that they are not responsible, because although allowing their servant to receive and charge for such property, they notified the public that no responsibility on their part was assumed, and that it was an affair of the baggage master, their employee.

There is no question of negligence or diligence in this case, for the fact is proved and not disputed that the baggage master delivered the dog to some one, other than the traveler, at a station to which the traveler was not bound. It is not therefore, a question, whether the R. R. Co. was bound as a common carrier, against all losses except those arising

from the acts of God or the enemies of the country, nor whether the company was bound to ordinary diligence, but whether the company is bound at all and under any circumstances. We think as the company undertook through its agent to transport the dog, and deliver him at a place designated and to the plaintiff, they should be held responsible for a delivery at a different place and to another person.

It may be questioned if the printed notice that "live animals are baggagemen's perquisites," necessarily leads to the conclusion that no responsibility whatever is assumed in such cases by the company. It certainly implies that the company allow these baggage masters to take "live animals" in the baggage room, and that the charge for doing so is a perquisite of the baggage master and does not go into the coffers of the company, but it does not necessarily imply that no responsibility whatever was assumed by the company. And if it did, can the company by such printed notices, exempt themselves from a responsibility for ordinary care and diligence in the transportation and delivery of the article? In other words, can the company take charge of the property and promise to deliver it and assume no liability whatever?

Judicial opinions both in England and this country are not altogether harmonious as to the limitations which common carriers may make, by special contracts or general notices on their common law liabilities; but I do not understand that any of the cases have gone so far as to determine that Railroad Companies can exempt themselves from that responsibility which every bailee assumes for ordinary care and common honesty. If their employees are allowed to receive goods or live animals at all for transportation, the public have a right to infer that without an accident they will be delivered to the person and at the place directed, and that ordinary care and diligence will be used for this end. It is a mere mockery to turn the owner over to a subordinate, about whose responsibility no one can know except the company that employs him.

The instructions therefore which assume the irresponsibility of the defendant, without regard to the execution of the

State ex rel. v. Sutterfield, et al.

implied contract by the baggage master, under any circumstances, were properly refused.

The evidence concerning the value of the dog in question, by the owner, and the opinions of other witnesses on the value of dogs generally, having the qualities attributed to this particular dog, was rightly admitted. Such is the usual mode of ascertaining the price of cattle or sheep or any other marketable commodity, and is necessarily more or less a matter of opinion among the dealers in such stock or property. Of course, actual sales may be more reliable evidence of the market price, but experts may be allowed to give their opinions based either on actual sales at the time and place, or on their general observation and experience, and was so held by Judge Nelson in the case of Brill vs. Flagler, 23 Wend., 355, and by the Court of Appeals in Clark vs. Bond, 9 N. Y., 188.

Judgment affirmed. The other judges concur.